IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

BRIAN MITCHELL,

    Defendant.

OPINION & ORDER

22-cr-36-wmc

---

    The court is in receipt of the government's objections to the Honorable Magistrate Judge Stephen Crocker's Report & Recommendation (dkt. #42) seeking to challenge his finding that a "State Trooper's testimony was not credible and, therefore, there was not probable cause to justify the search of the defendant's vehicle."  (Dkt. #47 at 1.)  The lengthy number of dubious objections to the Magistrate Judge's credibility finding are not just remarkable for their effort to try to rehabilitate Trooper Keegan Williams' changing version of events as first offered at a state preliminary hearing (dkt. #20-1), before a grand jury and finally at an evidentiary hearing in this court, but more critically, because Judge Crocker had the opportunity to assess the *demeanor* of Trooper Williams.  Indeed, both an additional affidavit from Trooper Williams, which purports to further change his testimony, and many of the government's objections now attempt to explain away Williams' demeanor while testifying and his inability to explain inconsistencies in his sworn testimony based on the fact that:  a high speed chase followed his initial stop; he was unprepared to testify having been on paternity leave; he only dealt with drug stops a

few times per month; and he was "surprised to see [his] old Sergeant from the State Patrol, now retired, and working [as] a Court Security Officer, in the [federal] courtroom during [his] testimony." (Dkt. #47-1 at ¶ 6.) That the U.S. Attorney's Office finds any of this to be adequate grounds to revisit Judge Crocker's credibility determination is difficult to comprehend, much less accept, having argued the exact opposite repeatedly with regard to his previous, favorable credibility findings against nervous, inexperienced, and unprepared defendants and their witnesses for thirty years.

At best, the government and Trooper Williams are attempting to undo a carefully explained, formal credibility determination by a highly experienced and respected Magistrate Judge who, if anything, bent over backwards to find grounds to credit Trooper Williams' incredible, specific testimony that he was able to smell raw marijuana as he approached a truck bed, even though the only detected presence of marijuana was inside the truck's closed cab:

> Q  Can you describe what happened when you were approaching the driver's side window?
> A  As I was approaching the vehicle, I smelled the odor of marijuana, and I could tell that it was coming from the vehicle.
> Q  About how far away from the vehicle were you when you began to smell the marijuana?
> A  I could tell it was coming from the vehicle, like, as I got to the truck bed.
> Q  And were you able to detect if it was raw or burnt?
> A  I smelled raw marijuana.
> Q  Is it common to be able to detect the odor of raw marijuana from that distance, being the bed of the truck?
> A  Yes.
> Q  Would you say that the smell was faint, strong, or something else?
> A  Strong.

(Dkt. #35 at 11:21-12:11.) Nor is there any question that the trooper was testifying to

smelling raw, *not* burnt, marijuana as he approached the truck bed on a windy winter night.

> Q  Is that specific to a certain controlled substance or is that what you'd be looking for . . . any kind of controlled substance?
> A  I'm specifically referring to marijuana.  For me, marijuana is the easiest controlled substance to detect on the side of the road.
> Q  And why is that?
> A  It has a strong odor that I do not really confuse with anything else.
> Q  Are you able to differentiate the odor between burnt and raw marijuana?
> A  Yes.
> Q  And is that from training and experience?
> A  Yes.

(*Id*. at 9:4-14.)

Worse still, in attempting in retrospect to try to explain a seemingly revealing statement made to another officer over the radio even before making the initial stop, Trooper Williams' new affidavit (even if properly considered after Judge Crocker closed the evidentiary record) makes the an more incredible claim that he actually had smelled the marijuana from his own, closed trooper car:

> My statement on recorded squad video that "I was about to message him [*Trooper Polizzi*] before I even stopped the car, 'hey come, come, come back me up, because I smell drugs'" was not a joke or offhand comment. My intention behind that statement was to express to Deputy VandeZande that I had already begun to smell the odor of marijuana as I pulled behind the vehicle. While approaching the vehicle, I was able to identify it coming [from] Mr. Mitchell's truck. I also was expressing regret that I did not call Trooper Polizzi when I originally thought to, as the traffic stop quickly escalated into a dangerous situation. There were no other vehicles around when I first pulled behind Mr. Mitchell's truck. In my experience, it is not uncommon that one can smell marijuana when behind a vehicle in which marijuana is being consumed or recently was consumed even when the vehicle is driving at highway speed with the windows rolled up.

(Dkt. #47-1 at ¶ 8.)   Then, to explain away his earlier, unambiguous testimony that it was "raw" marijuana he smelled, Williams newly offers:

> In retrospect, I am confident that I smelled marijuana when I approached Mr. Mitchell's truck – and even more so when I began interacting with Mr. Mitchell by the side of the road – but I am uncertain whether I smelled smoked marijuana, raw marijuana, or both.

(*Id*. at ¶ 9.)  In short, nothing in the government's objections to Magistrate Judge Crocker's credibility determination approaches grounds for me to revisit it.  To the contrary, an old, applicable expression comes to mind that is attributed to Will Rogers, "If you find yourself in a hole, stop digging."  The government should stop digging here.[1]

Having said that, buried on pages 17 and 18 of the government's objections, is a separate legal argument that had been made half-heartedly:  the Magistrate Judge should have considered "the trooper's authority to open the door to detain the defendant under *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330, 45 L.E.D.2d 331 (1977) (per curiam)."  (Dkt. #47 at 17.)  Specifically, the government argues that the trooper, having lawfully detained a motor vehicle for speeding, was permitted to "order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."  *Mimms*, 434 U.S. at 111 n.6.  Understandably, Magistrate Judge Crocker was unpersuaded, given that the trooper's reason for asking the driver to

---

[1] Indeed, the government now seems to be trying to spin a new version of events, despite Trooper Williams' sworn testimony to the contrary, and despite never advancing this version of events until after the close of the evidentiary record by Judge Crocker, that perhaps the two individuals in the truck may have been smoking marijuana in the truck's cab, then threw it out during the subsequent, high-speed chase.  (Dkt. #47 at 13-14.)

step out was the claimed smell of marijuana and the driver's denial that he had any. (Dkt. #42 at 2 n.2.)

Still, that objection is sufficient to allow the government to flesh it out. Accordingly,

ORDER

IT IS ORDERED that:

1. The government may file a brief on or before Tuesday, January 31, 2023, as to: (a) whether *Mimms* applies to an officer's request that the driver of a lawfully detained vehicle get out of his car despite for the wrong reason; and (b) if not, whether the Fourth and Fourteenth Amendments' impingement by unlawfully ordering the driver to do so is sufficient to justify suppression of evidence obtained by virtue of the driver's refusal of the request;

2. Defendant may file his response on or before February 14, 2023; and

3. The remaining deadlines in this case are STRUCK. This case is set for a telephonic status conference before Magistrate Judge Stephen Crocker on February 28, 2023, at 9:00 a.m.

Entered this 24th day of January, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge